IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Julie Wigington on behalf of H.M.,     :
          Plaintiff       :    Civil Action 2:13-cv-00281

     v.                   :    Judge Smith

Carolyn W. Colvin         :    Magistrate Judge Abel
Commissioner of Social Security,
          Defendant      :

**REPORT AND RECOMMENDATION**

Plaintiff Julie Wigington, on behalf of her minor daughter, H.M.,  brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income benefits.  This matter is before the  Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**<u>Summary of Issues.</u>** H.M.'s parents maintain that H.M. is disabled as a result of severe attention deficit and hyperactivity disorder ("AD/HD"). H.M. has a significant record of disciplinary issues at school based on her behavior.

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge erred in his consideration of the opinion of treating physician Sudheer Shirali, M.D.; and,
- The administrative law judge erred in his finding that plaintiff's prior application was not eligible for reopening.

**Procedural History.**  Plaintiff Julie Wigington initially filed an application on behalf of H.M.  for  Supplemental Security Income on April 18, 2007, alleging that H.M. became disabled on November 30, 2005, at age 6, by severe attention deficit and hyperactivity disorder and conduct disorder.  (R. 128-30.)  Wigington filed a second application on January 23, 2009 with a disability onset date of January 23, 2009. (R. 131-33.) The applications were denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On July 26, 2010, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (R. 43.) H.M.'s parents also testified.  On September 24, 2010, the administrative law judge issued a decision finding that H.M. was not disabled within the meaning of the Act.  (R. 22-37.)  On July 23, 2012, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 4-6.)

**Age, Education, and School Experience.**  H.M. was born April 2, 1999.   (R. 131.) At the time of the hearing, she was in the fifth grade and attended regular classes.

**Plaintiff's Testimony.**  The administrative law judge fairly summarized H.M. and her parents' testimony as follows:

> The claimant's parents testified that she has significant behavioral problems. (Testimony, Exhibits 9E, 13E, 17E, 24E). Her father reported that while her grades had improved in the immediate past school year, she had previous academic difficulties. (Testimony). Both parents reported that when the claimant is on her medications, she isolates herself and loses her appetite and when she is not on her medications, she is fidgety and hyperactive. (Testimony, Exhibits 9E,

2

12E, 13E, 17E, 24E). Her aunt, Ann Persons, completed a form reporting that the claimant needs help with each step of tasks, has very poor social skills, has few friends, and often loses her temper. (Exhibit 27E).

In contrast, the claimant testified that she likes school, enjoys art, has a lot of friends, and played softball this past spring. (Testimony). She also reported that she has friends in her neighborhood, likes to play on the trampoline, will ride her bike, enjoys doing 3-D puzzles, likes TV, and plays games on the computer. (Testimony).

(R. 29.) H.M.'s father, David McDonald, further testified that H.M. has violent behavioral issues. Her medications heavily sedate her. If she spends the night at a friend's house, she always comes home early. She could sit still in school until her medication took effect. Her medication caused her to fall asleep, and she fell asleep at her own birthday party. The parents of other children also complained about H.M.'s behavior in addition to reports from school. Mr. McDonald described H.M.'s behavior as ferocious. She isolated herself when she was medicated. She used to disappear and her parents have had to call the police to help locate her. (R. 58.)

Ms. Wigington, H.M.'s mother, testified that her daughter drove her "nuts." (R. 61.) H.M. complained that she could not have fun or socialize when she took her medication. Although her school performance had improved, her medication wore off by 1 p.m. H.M. played softball, but she required frequent reminders to pay attention. When taking tests, she lost interest as she progressed through the pages.

3

**Medical Evidence of Record.**  Although the administrative law judge's decision fairly sets out the relevant medical evidence of record, this Report and Recommendation will summarize that evidence in some detail.

William E. Mohler, M.A. On August 8, 2007, Mr. Mohler performed a consultative examination at the request of the Bureau of Disability Determination. Plaintiff was not medicated for the evaluation. On mental status evaluation, concentration was problematic. She had a short attention span and was quite distractible. Plaintiff had to be redirected to the task at hand on numerous occasions during the evaluation.

Plaintiff's mother reported that plaintiff exhibited oppositional defiant behaviors at home and school. Plaintiff had painted on things and felt little remorse. Plaintiff got along okay with some children but tended to be picked on and retaliated as a result. Mr. Mohler noted that her mother's behavior management skills appeared particularly weak.

Mr. Mohler concluded that plaintiff had normal intellectual skills and was generally on grade level in achievement skills. Her AD/HD was poorly controlled with her current medication. Mr. Mohler diagnosed attention deficit/hyperactivity disorder, combined type and oppositional defiant tendencies. He assigned a Global Assessment of Functioning ("GAF") score of 60, representing a moderate functional impairment.  (R. 335-38.)

4

Marianne Collins, Ph.D. On August 24, 2007, Dr. Collins, a state agency reviewing psychologist, completed a childhood disability evaluation form. Dr. Collins found no limitations with respect to plaintiff's ability to acquire and use information. She had average IQ test results, was in the appropriate grade and in a regular education classroom. Dr. Collins opined that plaintiff had less than marked limitations in attending and completing tasks. H.M. required daily medication. Numerous medications had been tried with some success. Her mother reported that she could not pay attention without medication. During her consultative examination, plaintiff had slightly elevated energy levels and was noticeably distractible. She gave good effort and persistence. H.M.'s ability to interact and relate with others was less than marked. H.M. had numerous infractions for her behavior at school and a few on the bus. She did not require a special classroom placement based on her behavior. She had friends and could get along with others for a few hours at a time. She tended to be a bully and to be aggressive. She had significant problems with her siblings.  Plaintiff had no limitation with respect to moving about and manipulating objects. Her limitations with respect to caring for herself were less than marked. She had no limitation with respect to her health and physical well-being.  (R. 341-46.)

Sudheer R. Shirali, M.D.    On April 20, 2009, Dr. Shirali, H.M.'s pediatrician, completed a Diagnosis of Mental Impairments form. Dr. Shirali noted the presence of marked inattention, marked impulsiveness, and marked hyperactivity. H.M had a

marked impairment in age-appropriate social functioning and marked difficulties in maintaining concentration, persistence or pace. (R. 351-52.)

On April 22, 2009, Dr. Shirali completed a form for the Bureau of Disability Determination. Dr. Shirali indicated that plaintiff had a behavior disorder. H.M. did not listen, and she disturbed the class. She was easily frustrated. He noted that plaintiff had a short attention span, was impulsive, and easily distracted. She had difficulty following direction. Without medication, plaintiff exhibited impulsivity, emotional lability, perceptual difficulties, irritability, and signs of tactile overloading. After taking medication, plaintiff had slight improvement in her impulsivity and her perceptual difficulties. She continued to show signs of tactile overloading. (R. 356.) H.M had poor peer relationships. She was defiant and fought with her siblings. Her symptoms have been present since age 4. Plaintiff was prescribed Focalin and Ritalin. He diagnosed attention deficit and hyperactivity disorder and a behavioral disorder. (R. 355-57.)

Dr. Shirali indicated it was very difficult to control H.M.'s symptoms. (R. 370.) On December 3, 2007, Dr. Shirali indicated that plaintiff did better with her medications, but it wore off by 3 p.m. Plaintiff can be "too quiet." (R. 382.) Notes from October 17, 2007 and February 22, 2008  indicated that plaintiff's medication was not helping. (R. 384, 380.)

Alice Chambly, Psy.D. On June 29, 2009, Dr. Chambly, a state agency psychologist, completed a Childhood Disability Evaluation Form. Dr. Chambly concluded that plaintiff had attention deficit hyperactive disorder. Plaintiff's

impairment was severe but it did not meet or equal any Listing. She noted that plaintiff had an average IQ and was placed in regular classes. She earned average grades. Plaintiff's pediatrician indicated that medication provided plaintiff with a slight improvement. Since beginning medication, H.M. had not had any school suspensions for an entire academic year. Her report card indicated that H.M. accepted and respected authority, although she continued to have problems with self-control and following rules. Dr. Chambly also noted that despite reports that plaintiff had difficulty with relationships, no objective evidence supported this assertion. (R. 395-400.)

Hope Pediatrics. On August 28, 2009, plaintiff underwent a well child examination at Hope Pediatrics. Vyvanse worked really well. She had gained weight. Art and computers were hobbies. She liked gymnastics. When seh was taking Vyvanse, H.M. listened and helped. A one month drug holiday over the summer did not work well. (R. 401.) Focus was noted to be a problem for H.M.  (R. 402.)

An ADHD/ADD Follow Up and Med Check form noted that plaintiff often made mistakes, failed to finish tasks, avoided tasks requiring sustained attention and was easily distracted. She was often forgetful. She always had difficulty sustaining attention and organizing. She did not seem to listen. She always lost things and was easily distracted. H.M. often had an inability to stay seated and moved excessively. She always fidgeted, had difficulty playing quietly, was always on the go, and talked excessively. She rarely blurted out answers before a question was completed. She often had difficulty waiting her turn, and she always interrupted or intruded on others. Rare

7

side effects included headaches and trouble sleeping. She often was excitable, impulsive, worried and anxious. She always experienced appetite loss. (R. 404.)

On December 22, 2009, H.M.'s father called and stated that her medication was not lasting and that evenings were bad. One of her medications was causing migraines, and she was having a rough time. She needed something to get through the holidays. (R. 409.) H.M.'s mother requested Ritalin for her daughter because it was the only thing that had helped thus far. The Vivaynse started to wear off mid-afternoon, and her behavior became worse. (R. 410.) During the evenings, H.M. became irritable and fidgety. Her mother thought someone was taking H.M.'s pills and now had a lock box. (R. 411.) On February 22, 2010, H.M.'s mother called and said she had a meeting at school that day about plaintiff hurting someone and showing no remorse. Her grades were good, but her behavior was bad. Her mother could not get her to do anything. At times, she did not care about anything. She shaved the cat. (R. 413.)

James M. Lyall, Ph.D. On August 30, 2010, Dr. Lyall, a neuropsychologist, completed an evaluation of H.M. She was 11 years old, quiet and a bit withdrawn. H.M. was neat and clean in appearance. She was quite thin. H.M. took her medication prior to the evaluation. H.M. stated that her medication is quite helpful in keeping her calm. (R. 416.)

H.M.'s medication caused her to lose her appetite. She had great difficulty with focus and concentration and could become quite aggressive when she was not on her medication. She exercised poor judgment when she did not take her medication. When

8

she played on a summer baseball team without taking her medication, she tried to hit another player with a bat. (R. 417.)

H.M. enjoyed spending time on the computer and putting puzzles together. H.M. reported that she had a number of friends and that she generally got along well with them. Her grandmother reported that when she did not take her medication, she often got into arguments and fights. H.M. bathed and brushed her teeth adequately. (R. 418.)

Dr. Lyall's functional assessment was that her cognition skills were three-fourths that of an age appropriate child. Her communication skills were age appropriate. Her fine and gross motor skills were possibly age appropriate based upon her grandmother's report that H.M. was an average athlete and could put puzzles together well. Her social and emotional skills appeared to be one-half that of an age appropriate child. She had great social difficulties when not taking her medication. Personal and behavioral patterns appeared to be one-half that of an age appropriate child, although it appeared that when she was taking her medication her behavior was better controlled. Her concentration, persistence, and pace in task completion were possibly two-thirds that of an age appropriate child. (R. 418.)

On examination, H.M. could remember three of three objects, both immediately and after five minutes. She repeated four numbers forward, but only three backward. Her grandmother reported that she could read adequately. Without her medication, she had great difficulty with focus and concentration. (R. 417.)

9

Dr. Lyall diagnosed attention deficit/hyperactivity disorder, combined type, and conduct disorder, childhood onset type. He assigned a current Global Assessment of Functioning ("GAF") score of 55. (R. 419.)

**<u>School Records</u>**. On May 15, 2007, Joan Arnold, H.M.'s second grade teacher wrote a letter to H.M.'s pediatrician regarding concerns about her behavior. H.M. was very aggressive with other students, wrote alarming notes, and used inappropriate language. She was described as a very needy child who was not afraid to bully others. Ms. Arnold also submitted a School Behavior Rating Scale that indicated plaintiff was severely overactive, inattentive, distractible and aggressive. She had severe attention getting behaviors and was unable to participate in a group. Plaintiff also exhibited bizarre behavior.  (R. 161-62.)

School records documented that plaintiff had been disciplined for the following:

- biting another student at recess;
- hitting a student at recess on two occasions;
- spitting spit balls in art class;
- trying to pressure two girls to kiss one another at recess;
- not following directions;
- playing around in class;
- talking in class;
- spitting on a student;
- disturbing class;
- telling students that she was going to get a BB gun and kill the teachers and take their candy;
- throwing things; and,
- biting a student at the bus stop.

(R. 163.)

10

On November 2, 2007, Lorraine Elavsky completed a teacher questionnaire from the Bureau of Disability Determination. Ms. Elavsky indicated that plaintiff was on grade level for reading and math. Plaintiff had no problems acquiring and using information. Plaintiff had slight problems playing cooperatively with other children and following rules. She stated that plaintiff was fine when she has had her medications. Ms. Elavsky indicated that plaintiff did not have any problems caring for herself. She described plaintiff as calm, focused, and in control of herself after taking her medication. (R. 179-86.)

A November 13, 2009 Vanderbilt ADHD Diagnostic Parent Rating Scale reported H.M. very often did not pay attention to details or made careless mistakes; had difficulty attending; did not seem to listen when spoken directly to; did not follow directions; loses things; was easily distracted; fidgeted; ran about when she should be seated; was "on the go"; talked to much; blurted out answer before question was asked; interrupted others; argued with adults; lost her temper; actively disobeyed; bothered others on purpose; blamed others for her mistakes; touchy and easily annoyed others; angry and bitter; hateful and wanted to get even; and bullied and threatened. She often avoided tasks she did not like; was forgetful of daily activities; had difficulty starting/playing quiet games; and had difficulty waiting her turn. She occasionally started physical fights. (R. 406.)

A January 22, 2010 Vanderbilt ADHD Diagnostic Parent Rating Scale reported H.M. very often did not pay attention to details or made careless mistakes; did not listen

when spoken directly to; did not follow through when given directs and failed to finish things; had difficulty organizing tasks and activities; avoided tasks that required ongoing mental effort; was easily distracted by noises or other things; ran about when she was supposed to stay seated; had difficulty playing or starting quiet games; was "on the go"; talked too much; interrupted or bothered others when they were talking or playing games; argued with adults; lost her temper; actively disobeyed or refused to follow an adult's requests or rules; and blamed others for her mistakes or misbehavior. (R. 408.)

In January 2010, K. Bresenthan, a fifth grade teacher, faxed a completed Vanderbilt ADHD Diagnostic Teacher Rating Scale to Hope Pediatrics. Plaintiff often failed to give attention to details and made careless mistakes in schoolwork; had difficulty organizing tasks and activities; had difficulty playing or engaging in leisure activities quietly; and talked excessively. She was very often forgetful in daily activities. (R. 289-90.) At the same time, Mrs. Woods faxed a completed Vanderbilt ADHD Diagnostic Teacher Rating Scale to Hope Pediatrics. Mrs. Woods indicated that plaintiff very often failed to give attention to details or made careless mistakes in schoolwork; did not listen when spoken to directly; had difficulty organizing tasks and activities; and talked excessively. She often lost things necessary for tasks or activities; was forgetful in daily activities; left her seat when remaining seated was expected; had difficulty playing or engaging in leisure activities quietly; and had difficulty waiting in line.  (R. 291-92.)

12

## Administrative Law Judge's Findings.

1.  I decline to reopen the claimant's Title XVI application of April 18, 2007 for the reasons discussed above.

2.  The claimant was born on April 2, 1999, therefore she was a school-age child on January 23, 2009, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

3.  The claimant has not engaged in substantial gainful activity since January 23, 2009, the application date (20 CFR 416.924(b) and 416.971 *et seq*.).

4.  The claimant has the following severe impairments: attention deficit hyperactivity disorder and conduct disorder. (20 CFR 426.924(c)).

5.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

6.  The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).

7.  The claimant has not been disabled, as defined in the Social Security Act, since January 23, 2009, the date the application was filed (20 CFR 416.924(a)).

(R. 27-37.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is

"'more than a mere scintilla.'" *Id. LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir.

1976). The Commissioner's findings of fact must be based upon the record as a whole.

*Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366

(6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining

whether the Commissioner's decision is supported by substantial evidence, the Court

must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers*

*v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and*

*Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Plaintiff argues that the decision of the Commissioner

denying benefits should be reversed because:

- The administrative law judge erred in his consideration of the opinion of
  treating physician Sudheer Shirali, M.D. Plaintiff argues that the
  administrative law judge improperly concluded that Dr. Shirali's opinion was
  not supported by his treatment notes. Dr. Shirali opined that H.M. suffers
  from marked inattention, impulsiveness, and hyperactivity and had marked
  deficiencies in age appropriate social functioning, and concentration,
  persistence and pace. Dr. Shirali's notes indicate that H.M.'s medications
  frequently did not work, and even when they were working, they wore off too
  quickly. Dr. Shirali monitored H.M.'s personal and academic progress. He
  noted that it was difficult to control her symptoms. The administrative law

judge rejected Dr. Shirali's opinion because he found his notes to be illegible. Plaintiff maintains that the administrative law judge apparently did not attempt to read those portions of his notes that were legible and supported his opinion. Plaintiff maintains it is error to characterize a provider's notes as illegible when many of the notes can be read. Plaintiff also objections to the administrative law judge's rejection of Dr. Shirali's opinion on the basis that it was not consistent with the opinion of a one time consultative examiner who had no treatment relationship with H.M.

- <u>The administrative law judge erred in his finding that plaintiff's prior application was not eligible for reopening</u>. The administrative law judge erred when he concluded that the report of Dr. Shirali was duplicative. Rather, plaintiff maintains that the evidence submitted was new and material

**Analysis.**  Treating Doctor: Legal Standard.  A treating doctor's opinion[1] on the issue of disability is entitled to greater weight than that of a physician who has examined plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record.  20 C.F.R. § 404.1527(d)(1).  *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).  The Commissioner's regulations explain that Social Security generally gives more weight to a treating doctors' opinions because treators are usually "most able to provide a detailed, longitudinal picture" of the claimant's medical impairments. 20 C.F.R. § 404.1527(d)(2).  When the treating doctor's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the Commissioner "will give it controlling weight. " *Id.*

---

[1]The Commissioner's regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2). Treating sources often express more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at *2. When an administrative law judge fails to give a good reason for rejecting a treator's medical opinion, remand is required unless the failure does not ultimately affect the decision, *i.e.*, the error is *de minimis. Wilson,* 378 F.3d at 547. So reversible error is not committed where the treator's opinion "is patently deficient that the Commissioner could not possibly credit it;" the administrative law judge's findings credit the treator's opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R. § 1527(d)(2) but does not technically meet all its requirements. *Id. See, Gayheart v. Commissioner of Social Security,* 710 F.3d 365, 380 (6th Cir. 2013).

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable." 42 U.S.C. §423(d)(1)(A). Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence. *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975). 20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b), and 404.1527(a)(1)[2].

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic

---

[2]Section 404.157(a)(1) provides:
You can only be found disabled if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. See §404.1505. Your impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. See §404.1508.

17

techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

When the treating source's opinion is well-supported by objective medical evidence and is not inconsistent with other substantial evidence, that ends the analysis. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p[3]. *Gayheart v. Commissioner of Social Security,* 710 F.3d 365, 375 (6th Cir. 2013). The Commissioner's regulations require decision-makers "to provide 'good reasons' for discounting the weight given to a treating-source opinion. [20 C.F.R.] § 404.1527(c)(2)."[4] *Gayheart,* 710 F.3d at 375.

The Commissioner has issued a policy statement, Social Security Ruling 92-6p, to guide decision-makers' assessment of treating-source opinion. It emphasizes:

1. A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2. Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.*, opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3. Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

---

[3]Social Security Ruling 96-2p provides, in relevant part:

. . .

6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

[4]Section 404.1527(c)(2) provides, in relevant part: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

4. Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5. The judgment whether a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7. A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.

The focus at this step is solely on whether the treating-source opinion is well-supported by objective medical evidence and not inconsistent with other substantial evidence. In making this determination the factors for assessing the *weight* to give to the medical opinions of any medical source, 20 C.F.R. § 404.1527(c), are not used. These come into play only when there are good reasons not to give the treating-source opinion

controlling weight.  20 C.F.R. § 404.1527(c)(2)[5]; *Gayheart,* above,710 F.3d at 376, 2013 WL 896255, *10.

If there are good reasons to find that the treating-source opinion is not controlling, then the decision-maker turns to evaluating all the medical source evidence and determining what weight to assign to each source, including the treating sources[6]. The Commissioner's regulations require the decision-maker to considers the length of the relationship and frequency of examination; nature and extent of the treatment

---

[5]Section 404.1527(c)(2) provides, in relevant part:
 If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. *When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(I) and (c)(2)(ii)* of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion

(Emphasis added.)

[6]Even when the treating source-opinion is not controlling, it may carry sufficient weight to be adopted by the Commissioner:
Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and labora- tory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weigh- ed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p.

relationship; how well-supported the opinion is by medical signs and laboratory

findings; its consistency with the record as a whole; the treating source's specialization;

the source's familiarity with the Social Security program and understanding of its

evidentiary requirements; and the extent to which the source is familiar with other

information in the case record relevant to decision.  20 C.F.R. § 404.1527(c)(1) through

(6). Subject to these guidelines, the Commissioner is the one responsible for determining

whether a claimant is disabled.  20 C.F.R. § 404.1527(e).

The case law is consistent with the principals set out in Social Security Ruling 96-

2p.  A broad conclusory statement of a treating physician that his patient is disabled is

not controlling.  *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).  For the treating

physician's opinion to have controlling weight it must have "sufficient data to support

the diagnosis."  *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th

Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  The Commissioner may

reject the treating doctor's opinions when "good reasons are identified for not accepting

them."  *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); *Wilson v. Commissioner of Social

Security,* 378 F.3d 541, 544 (6th Cir. 2004). These reasons must be "supported by the

evidence in the case record, and must be sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *5;

 *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242 (6th Cir. 2007). This

procedural requirement "ensures that the ALJ applies the treating physician rule and

permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc.*

*Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).Moreover, the conflicting substantial evidence "must consist of more than the medical opinions of nontreating and nonexamining doctors." *Gayheart*, 710 at 377. Even when the Commissioner determines not to give a treator's opinion controlling weight, the decision-maker must evaluate the treator's opinion using the factors set out in 20 C.F.R. § 404.1527(d)(2). *Wilson,* 378 F.3d at 544; *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009). There remains a rebuttable presumption that the treating physician's opinion "is entitled to great deference." *Rogers v. Commissioner of Social Security,* 486 F.3d at 242; *Hensley*, above. The Commissioner makes the final decision on the ultimate issue of disability. *Warner v. Commissioner of Social Security,* 375 F.3d at 390; *Walker v. Secretary of Health & Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

 <u>Treating Doctor: Discussion</u>.  When evaluating Dr. Shirali's opinion, the administrative law judge stated:

> As for the opinion evidence, the report of Dr. Sudheer Shirali from April 2009 is given little weight. (Exhibit 6F). Dr. Shirali indicated that the claimant suffers from marked inattention, marked impulsiveness, and marked hyperactivity. (Exhibit 6F). He also opined that the claimant had impairment in age-appropriate social functioning, and marked impairment in concentration, persistence, or pace. (Exhibit 6F). Generally, Dr. Shirali's records do not include specific findings that would support the severity of symptoms reported in this opinion. This is also contradicted by the claimant's academic performance in school, the records from Hope Pediatrics indicating that the claimant's Vyvanse was working, and the report and opinion of Dr. Lyall indicating that the claimant, overall, was experiencing only moderate symptoms.

(R. 31.) He described Dr. Shirali's treatment notes from February 9, 2006 through

August 20, 2007 as follows:

> While a majority of these records are illegible, it is clear that most relate to
> common ailments that were unrelated to the claimant's ADHD including
> one-time ailments such as stomach ache, sore throat, wart removal,
> diarrhea, and earache. (Exhibit 8F). There were references to a diagnosis of
> ADHD and treatment with medication, including Ritalin. (Exhibit 8F).
> One record noted that the claimant was fidgety. (Exhibit 8F). . . . Dr.
> Shirali essentially summarized his records in the report noting the same
> period of treatment found in the aforementioned records and reporting
> that the claimant had ADHD, was "fidgety", and treated with
> medications, including Ritalin. (Exhibit 2F).

(R. 24-25.)

Here, the administrative law judge concluded that Dr. Shirali's opinion was not

supported by objective medical evidence and was inconsistent with other substantial

evidence. Dr. Shirali's treatment notes do not provide results from a mental status

examination, nor do they document that he observed any specific symptoms. Thus, it

appears that the basis for his opinion was solely the symptoms reported by H.M.'s

mother. He did not administer any standardized tests to assess H.M.'s functional

limitations regarding cognitive abilities, memory, and ability to sustain attention and

concentration, nor did he refer her to such testing. The administrative law judge did

refer to H.M.'s school records, statements she and family members made, Dr. Lyall's

clinical findings and RFC assessment, Hope Pediatric treatment records and the State

agency psychologists' review of the record in making his fact findings and RFC

findings. It is not the Court's role to sift through the facts and make a *de novo*

determination of whether a claimant is disabled.  The administrative law judge, not the

Court, is the finder of fact.  *Siterlet v. Secretary of Health & Human Services*, 823 F.2d 918,

920 (6th Cir. 1987). So long as the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. §405(g). *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In a close case, where there is substantial evidence supporting the administrative law judge's resolution of the disputed facts, the Court must affirm even if it would likely have resolved the disputed facts in plaintiff's favor had it been a trier of fact. *Nunn v. Bowen*, 828 F.2d 1140, 1144 (6th Cir. 1987); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). There is a large zone of choice where the Commissioner's decision to deny benefits is supported by substantial evidence, and, had the Commissioner granted benefits, that decision also would have been supported by substantial evidence. *Mullen v. Secretary of Health & Human Services*, 800 F.2d 535, 548 (6th Cir. 1986)(*en banc*). In close cases, the Commissioner's decision must be affirmed so long as there is substantial evidence supporting the Commissioner's fact determinations "because there is a 'zone of choice' within which the Commissioner can act, without fear of court interference." *Mullen*, 800 F.2d at 545(citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984))." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

Plaintiff's argument that the administrative law judge ignored those portions of Dr. Shirali's notes that are legible is not supported by the record. First, the administrative law judge did refer to portions of those notes that he could read. (R. 24-25.) Second, while Dr. Shirali's notes are very difficult to read, plaintiff has pointed to no specific portions of those notes that he did not refer to but that are substantial evidence supporting Dr. Shirali's opinion on the issue of disability. Consequently, it

24

cannot be said that the administrative law judge's finding that Dr. Shirali's notes do not

support his opinion was error.

Reopening. Plaintiff argues that the administrative law judge erred in his finding

that plaintiff's prior application was not eligible for reopening. Plaintiff's argument is

without merit:

> Although a claimant may seek to have a determination of the Secretary
> reopened, it is within the Secretary's discretion whether or not to reopen
> the case. In the present case, the ALJ did not choose to reopen plaintiff's
> first application for disability benefits filed in November 1981. Under
> Califano v. Sanders, 430 U.S. 99, 107–08, 97 S. Ct. 980, 985, 51 L.Ed. 2d 192
> (1977), when a prior decision is not reopened, this court has no jurisdiction
> to review the actions of the Secretary on the earlier claim in the absence of
> a colorable constitutional claim.

Bogle v. Sullivan,  998 F.2d 342, 346 (6th Cir. 1993).

From a review of the record as a whole, I conclude that there is substantial

evidence supporting the administrative law judge's decision denying benefits.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social

Security be **AFFIRMED.**  It is **FURTHER RECOMMENDED** that plaintiff's motion for

summary judgment be **DENIED** and that defendant's motion for summary judgment

be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within

fourteen (14) days, file and serve on all parties a motion for reconsideration by the

Court, specifically designating this Report and Recommendation, and the part thereof

in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b),

Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

        s/Mark R.  Abel
United States Magistrate Judge